# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MART D. GREEN, Trustee of the David and Barbara Green 1993 Dynasty Trust, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-13-1237-D |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

## O R D E R

This is a tax refund action arising from the internal revenue laws of the United States. Before the Court are the parties' cross-motions for summary judgment [Doc. Nos. 37, Plaintiff, and 38, Defendant]. Defendant has responded to Plaintiff's motion [Doc. No. 42], and Plaintiff has responded to Defendant's motion [Doc. No. 43]; Plaintiff has filed a Reply in support of his motion [Doc. No. 47]. The motions are fully briefed and ready for determination. This Order primarily addresses Plaintiff's Motion for Partial Summary Judgment.[1]

---

[1] The issues in the motions substantially overlap. However, in addition to the issues addressed in this Order, Defendant's Motion requests summary judgment regarding $4.7 million in cash contributions made by Hobby Lobby Stores, Inc., as well as Plaintiff's overall entitlement or lack thereof to a tax refund exceeding the $20 million it has already received. These issues will be addressed in a subsequent order.

**Statement of Undisputed Facts**

The Trust and GDT

On December 7, 1993, David M. Green, Barbara A. Green, and Mart D. Green signed a Trust Agreement creating The David and Barbara Green 1993 Dynasty Trust (the "Trust"). *See* Complaint [Doc. No. 1-1]. David and Barbara Green are the settlors of the Trust, and Mart D. Green is the trustee ("Plaintiff"). The Trust expressly authorizes Plaintiff to "distribute to charity such amounts from the gross income of the Trust as the [Plaintiff] determines appropriate" [Doc. No. 1-1, § 2.2]. The Trust also provides that "[a] distribution may be made from the Trust to charity only when both the purpose of the distribution and the charity are as described in Section 170(c) of the Code" [Doc. No. 1-1, § 1.6].[2]

The Trust wholly owns GDT CG1, LLC ("GDT"), a single-member limited liability company. GDT is disregarded as an entity separate from the Trust for federal income tax purposes.[3]

---

[2] "Charitable contribution," as defined by 26 U.S.C. § 170(c), includes "a contribution or gift to or for the use of ... [a] corporation, trust, or community chest, fund, or foundation ... organized and operated exclusively for religious [or] charitable ... purposes." *Id.* at § 170(c)(2)(B).

[3] Absent a taxpayer election to the contrary, a single-member limited liability company is not regarded as separate from its owner for income tax purposes. *See* 26 C.F.R. § 301.7701-3. As such, the income, deductions, and credits of the disregarded entity are reported and reflected on its owner's income tax return. *Id.*

Hob-Lob Limited Partnership

Between 2002 and 2004, Hob-Lob Limited Partnership ("Hob-Lob") owned or operated many, but not all, Hobby Lobby stores.[4] During this same period, the Trust was a 99% limited partner in Hob-Lob. Consequently, Hob-Lob filed its yearly income tax return (Form 1065, U.S. Return of Partnership Income) with the Internal Revenue Service ("IRS") and, in conjunction with that filing, issued a yearly form known as a Schedule K-1 to all of its partners, including the Trust.[5]

On line 22 of the 2002 Schedule K-1 issued to the Trust, Hob-Lob reported that the Trust received distributions of $38,722,126 during the year ending December 31, 2002. On line 1 of the same document, Hob-Lob reported that the Trust's distributive share[6] of ordinary business income totaled $72,465,646 for that same year. The Trust reported such amount on its 2002 income tax return.

On line 22 of the 2003 Schedule K-1 issued to the Trust, Hob-Lob reported that the Trust received distributions of $41,076,436 during the year ending December 31, 2003. On line 1 of the same document, Hob-Lob reported that the Trust's distributive share of ordinary

---

[4] Hobby Lobby stores sell craft supplies throughout the United States.

[5] Among other things, a Schedule K-1 identifies each partner's share of income, deductions, and credits that flow through the partnership to the partner, as well as any distributions from the partnership to the partner for the particular year.

[6] "Distributive share" refers to the allocation of income, gain, loss, deduction, and credit from a partnership business to a partner. *See* 26 U.S.C. § 702.

business income totaled $68,303,318 for that same year. The Trust reported such amount on its 2003 income tax return.

On line 19 of the 2004 Schedule K-1 issued to the Trust, Hob-Lob reported that the Trust received distributions of $29,480,397 during the year ending December 31, 2004. On line 1 of the same document, Hob-Lob reported that the Trust's distributive share of ordinary business income totaled $60,543,215 for that same year. The Trust reported such amount on its 2004 income tax return.

Virginia Property

On February 19, 2003, GDT purchased approximately 109 acres of land and two industrial buildings in Lynchburg, Virginia from Ericsson, Inc. for $10.3 million. GDT obtained the money to purchase the property through a distribution from Hob-Lob to the Trust. For purposes of the summary judgment motions only, the parties stipulate that this distribution was part of the distributive share of ordinary business income from Hob-Lob to the Trust in 2003.

On March 19, 2004, GDT donated a significant portion of the property to the National Christian Foundation Real Property, Inc. ("NCF"). The donation consisted of the two industrial buildings and approximately 73 acres of land (the "Virginia Property"). At that time, NCF was an organization described in 26 U.S.C. § 170(b)(1)(A). The Trust reported on Form 8283, Noncash Charitable Contributions, attached to its 2004 income tax return, that as of March 19, 2004, its adjusted basis in the Virginia Property was $10,368,113.

Although a factual dispute exists between the parties regarding the fair market value of the Virginia Property on the date of donation, for purposes of the summary judgment motions only, both parties stipulate that the Virginia Property had a fair market value in excess of $10,368,113 on March 19, 2004.

Oklahoma Property

In August 2002, GDT purchased a church building and several outbuildings in Ardmore, Oklahoma (the "Oklahoma Property") from Trinity Baptist Church for $150,000. GDT obtained the $150,000 necessary for the purchase through a distribution from Hob-Lob to the Trust. For purposes of the summary judgment motions only, the parties stipulate that this distribution was part of the distributive share of ordinary business income from Hob-Lob to the Trust in 2002.

On October 5, 2004, GDT donated the Oklahoma Property to the Southwest Oklahoma District Church of the Nazarene ("SWODCN"). At that time, SWODCN was an organization described in 26 U.S.C. § 170(b)(1)(A). The Trust reported on Form 8283, Noncash Charitable Contributions, attached to its 2004 income tax return, that as of October 5, 2004, its adjusted basis in the Oklahoma Property was $160,477. The fair market value of the Oklahoma Property was $355,000 on said date.

Texas Property

In June 2003, GDT purchased approximately 3.8 acres of land in Dickinson, Texas (the "Texas Property") from Marina Bay Development Corp., Inc./Travis Moss for $145,000.

GDT obtained the $145,000 necessary for the purchase through a distribution from Hob-Lob to the Trust. For purposes of the summary judgment motions only, the parties stipulate that this distribution was part of the distributive share of ordinary business income from Hob-Lob to the Trust in 2003.

On October 5, 2004, GDT donated the Texas Property to the Lighthouse Baptist Church ("LBC"). At that time, LBC was an organization described in 26 U.S.C. § 170(b)(1)(A). The Trust reported on Form 8283, Noncash Charitable Contributions, attached to its 2004 income tax return, that as of October 5, 2004, its adjusted basis in the Texas Property was $145,180. The fair market value of the Texas Property was $150,000 on said date.

Amended Return

On or about October 15, 2005, Plaintiff timely filed the Trust's Form 1041 income tax return for tax year 2004 with the IRS, claiming a charitable deduction totaling $20,526,383. On October 15, 2008, Plaintiff timely filed an amended Form 1041 (the "Amended Return") on behalf of the Trust, increasing the Trust's reported charitable deduction to $29,654,233 and claiming a tax refund of $3,194,748. On December 8, 2011, the IRS sent Plaintiff a Notice of Disallowance of the refund claim stating "[t]he charitable contribution deduction for the real property donated in 2004 is limited to the basis of the real property contributed" [Doc. No. 1-3].

**Standard of Decision**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Matters of statutory interpretation present questions of law "appropriate for resolution on summary judgment." *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citation omitted). When interpreting statutory language, the Court's duty is to determine congressional intent by beginning with the "plain language of the law." *St. Charles Inv. Co. v. Comm'r*, 232 F.3d 773, 776 (10th Cir. 2000). Traditional canons of statutory interpretation guide "judges [in] determin[ing] the Legislature's intent as embodied in particular statutory language." *Chickasaw Nation v. United States*, 534 U.S. 84, 94 (2001). However, such guides "need not be conclusive and are often countered ... by some maxim pointing in a different direction." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001). Therefore, the Court must analyze the statute as a whole and look to the "disputed language in context, not in isolation," when ascertaining congressional intent from statutory text. *True Oil Co. v. Comm'r*, 170 F.3d 1294, 1299 (10th Cir. 1999) (internal quotations omitted).

**Analysis**

Plaintiff's Motion presents the following issue: "whether a charitable deduction under 26 U.S.C. § 642(c)(1) for donated real property purchased out of gross income should be

calculated based on the property's fair market value or the [T]rust's adjusted basis[7] in the property." *See* Plaintiff's Motion [Doc. No. 37] at 1. Plaintiff contends the fair market value standard should apply to the charitable deduction because Congress did not specify a different valuation standard in 26 U.S.C. § 642(c)(1). Defendant argues (1) that 26 U.S.C. § 642(c)(1) limits a trust's deduction to the amount of gross income it contributed to charity; (2) gross income does not include unrealized appreciation; and (3) a liberal construction of the statute allowing fair market valuation would negate the gross income derivative requirement.

Construction of § 642(c)(1)

The Court begins its analysis with the language of 26 U.S.C. § 642(c)(1), which, in pertinent part, provides:

> [T]here shall be allowed as a deduction in computing its taxable income (in lieu of the deduction allowed by section 170(a), relating to deduction for charitable, etc., contributions and gifts) any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, paid for a purpose specified in section 170(c) (determined without regard to section 170(c)(2)(A)). If a charitable contribution is paid after the close of such taxable year and on or before the last day of the year following the close of such taxable year, then the trustee or administrator may elect to treat such contribution as paid during such taxable year. The election shall be made at such time and in such manner as the Secretary prescribes by regulation.

---

[7] Adjusted basis is "cost, less certain property-related expenditures, depreciation, and other statutory decreases." *See* Defendant's Motion for Summary Judgment [Doc. No. 38] at 4, n.1 (citing 26 U.S.C. §§ 1011, 1012(a), and 1016).

*Id.*[8] As indicated in the statute, to properly understand the meaning of § 642(c)(1) requires one to look to 26 U.S.C. § 170, which pertains to charitable deductions by individuals and corporations. Among other things, § 170 defines and categorizes qualifying charities and, based upon the particular charity, limits the amount of a taxpayer's adjusted gross income which can be deducted in a single year.[9] *See* 26 U.S.C. § 170(b). It also distinguishes between charitable contributions of cash and property other than money, and values the latter at the fair market value at the time of contribution. *See* 26 U.S.C. § 170(f)(8)(B)(1)*; see also* 26 C.F.R. § 1.170A-1(c)(1).[10] The policy behind § 170 is to "encourag[e] charitable activities." Michael P. Rose and John C. Chommie, *Federal Income Taxation* § 11.18, at 664 (3d ed. 1988). The statute at issue, 26 U.S.C. § 642(c)(1), has a similar purpose,[11] and must

---

[8] Neither party contends that the language of § 642(c)(1) is ambiguous, but each advances different applications on the instant facts. The Court agrees that the language in question is clear and capable of interpretation without resort to extraneous sources.

[9] Any excess deduction not allowed under the limitation can be carried forward for five years. *See* 26 U.S.C. § 170(b)(1)(B)(ii).

[10] "If a charitable contribution is made in property other than money, the amount of the contribution is the fair market value of the property at the time of the contribution reduced as provided in section 170(e)(1) and paragraph (a) of § 1.170A – 4, or section 170(e)(3) and paragraph (c) of § 1.170 – 4A." 26 C.F.R. § 1.170A – 1.

[11] In *Old Colony Tr. Co. v. Comm'r*, 301 U.S. 379 (1937), the Court stressed the importance of construing § 162(a) of the 1928 Revenue Act – 26 U.S.C. § 642(c)'s precursor – congruent with Congress's intent to "encourage[] ... donations by trust estates." *Id.* at 384. The Tenth Circuit echoed such sentiment in *Comm'r v. F.G. Bonfils Tr.*, 115 F.2d 788 (10th Cir. 1940), holding "[t]he purpose of Congress in enacting [this section] was to encourage charitable gifts ... [and similar] provisions have been judicially construed so as to further and not hinder their beneficent purpose." *Id.* at 791 (citations omitted).

be read in light of the basic definitions and principles set forth in § 170, except where expressly contradictory. *See Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972) (discussing the rule of *in pari materia*).[12]

A notable distinction between § 642 and § 170 is the absence of limiting language in § 642, which is present in § 170. Rather than place limiting language in § 642, Congress specified a deduction "without limitation." *See* 26 U.S.C. § 642(c)(1); *see also* Daniel Halperin, *A Charitable Contribution of Appreciated Property and the Realization of Built-in Gains*, 56 TAX L. REV. 1, 24 (2002) (briefly discussing the distinction and acknowledging the unlimited charitable deduction that trusts and estates enjoy with regard to donations made from gross income). Defendant's interpretation, though, seeks to impose limitations where Congress clearly declined to do so. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

---

[12] "The rule of in pari materia – like any canon of statutory construction – is a reflection of practical experience in the interpretation of statutes[; it] ... is but a logical extension of the principle that individual sections of a single statute should be construed together, for it necessarily assumes that whenever Congress passes a new statute, it acts aware of all previous statutes on the same subject." *Erlenbaugh* 409 U.S. at 239 (citing *Allen v. Grand Cent. Aircraft Co.*, 347 U.S. 535, 541 (1954)) (further citations omitted). Thus, 26 U.S.C. §170, and its underlying policy, forms part of the context the Court must consider when determining the intent of Congress as reflected in the plain language of the statutory text at issue here. *See, e.g.*, *True Oil Co.*, 170 F.3d at 1299 (disputed language of a statute must be examined in context, not in isolation; the court looks to the language and design of a statute as a whole).

Despite the absence of any limiting language in § 642(c)(1), Defendant argues for a strained construction, and holds tight to the "familiar rule that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer." *INDOPCO Inc. v. Comm'r*, 503 U.S. 79, 84 (1992) (quoting *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593 (1943) (internal quotations omitted)).

The Sixth Circuit addressed this distinction in *Weingarden v. Comm'r*, 825 F.2d 1027 (6th Cir. 1987), acknowledging that generally statutes imposing a tax are construed liberally, in favor of the taxpayer, while statutes allowing deductions and exemptions are strictly interpreted, being "matters of legislative grace." *Id.* at 1029 (citing *Porter v. Comm'r*, 288 U.S. 436, 442 (1933) and I. R. Mertens, *Law of Federal Income Taxation* §§ 3.05, 3.07 (1986) (internal quotations omitted)). However, and of particular importance here, *Weingarden* went further to distinguish statutes regarding charitable deductions, stating they are not matters of legislative grace, but rather "expression[s] of public policy." *Weingarden*, 825 F.2d at 1029 (citing *Helvering v. Bliss*, 293 U.S. 144, 150-51 (1934) (further citations omitted, internal quotations omitted)). As such, "[p]rovisions regarding charitable deductions should ... be liberally construed in favor of the taxpayer." *Id.* (citing *Hartwick Coll. v. United States*, 801 F.2d 608, 615 (2d Cir. 1986)). Thus, even if the language of the statute were unclear, a liberal construction in favor of the taxpayer would be appropriate.

Gross Income

Other language at issue in 26 U.S.C. § 642(c)(1) is the term "gross income," and whether that term includes properties purchased by the Trust in one year and donated to charities in another ("Donated Properties").[13] The Supreme Court, considering 26 U.S.C. § 642(c)(1)'s predecessor, noted "[t]here are no words limiting [donations] to something actually paid from *the year's* [gross] income. And so to interpret the Act could seriously interfere with [its] beneficent purpose." *Old Colony*, 301 U.S. at 348 (emphasis added). Therefore, the fact that the Donated Properties were given to charities in a year subsequent to their purchase does not disqualify them from being considered as charitable donations derived from gross income.

However, Defendant also contends that for the Donated Properties to qualify as charitable deductions under § 642(c)(1), they must be "*sourced from*[14] *and traceable to*[15] a trust's gross income." *See* Defendant's Motion [Doc. No. 38] at 13 (citing 26 U.S.C. § 642(c)(1) and *Crestar Bank v. I.R.S.*, 47 F. Supp. 2d 670 (E.D. Va. 1999) (emphasis added)).

---

[13] Gross income includes "all income from whatever source derived, including ... gains from dealings in property." 26 U.S.C. § 61(a)(3).

[14] "Sourced" is defined as "a point of origin or procurement." *See* Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. No. 43] at 1 (citing MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1123 (10th ed. 1993) (internal quotations omitted)).

[15] "Tracing" is defined as "[t]he process of tracking property's ownership or characteristics from the time of its origin to the present." *See* Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. No. 43] at 1 (citing BLACK'S LAW DICTIONARY 1629 (9th ed. 2009) (internal quotations omitted)).

The parties agree that the requirements necessary to qualify as a deduction under § 642(c)(1) include that the donation be traceable to gross income. *See infra* note 16. The Court concurs, and finds there is no real question here regarding the type of income used to purchase the Donated Properties. The properties were all purchased with distributions from Hob-Lob to the Trust. Each distribution was part of GDT's gross income for the year in which it was distributed. Therefore, the Donated Properties were purchased with an amount of the Trust's gross income.

Defendant also asserts that Plaintiff is not entitled to the § 642(c)(1) deduction because, when the donations were made, the Donated Properties had become part of the principal of the Trust, and that Plaintiff was not authorized to make charitable donations from principal (i.e., the donations were not "pursuant to the terms of the governing instrument"). Plaintiff counters that Defendant conflates the federal tax concept of "gross income," with state law fiduciary accounting concepts of "income" and "principal." The Court agrees with Plaintiff.

First, it should be noted that Defendant's argument that the donations are not in conformity with the Trust instrument is belied by Defendant's apparent concession that Plaintiff is entitled to a § 642(c)(1) deduction *in some amount* – at most, limited by the adjusted basis in the Donated Properties. *See, e.g.*, Defendant's Opposition to Plaintiff's Motion [Doc. No. 42] at 13 ("It is the United States' position that, at most, the Trust's charitable deduction relating to the Donated ... Properties would be the adjusted basis ....").

Indeed, Defendant devotes the vast majority of its argument not to the notion that the Donated Properties were purchased from a source other than gross income, but to the proposition that the amount of the § 642(c)(1) deduction should be limited to the adjusted basis in the Donated Properties. Nevertheless, the more appropriate focus when considering whether the first requirement[16] of the § 642(c)(1) deduction is met – that the contribution was pursuant to the terms of the trust instrument – is whether the trust instrument authorizes the trustee to make charitable contributions, and here it clearly does. *See* Trust, § 2.2 [Doc. No. 1-1, p. 7 of 55 (ECF numbering)]; *see also John Allan Love Charitable Found. v. United States*, 710 F.2d 1316, 1319 (8th Cir. 1983) ("The statutorily mandated test is whether the charitable contributions were made 'pursuant to the terms of the governing instrument.' We believe an essential element of this test is that the trust instrument authorize the trustee to make charitable contributions."). Defendant's conflating of fiduciary accounting principles with the federal tax concept of gross income unnecessarily muddies the water – here, there can be no serious question that the donations were made "pursuant to the terms of the governing instrument."[17]

---

[16] The parties agree that to qualify for a § 642(c)(1) deduction a contribution must be: (1) authorized by and made pursuant to the trust instrument; sourced from and traceable to gross income; and (3) for a purpose specified in 26 U.S.C. § 170(c). *See* Plaintiff's Motion [Doc. No. 37] at 10; Defendant's Motion [Doc. No. 38] at 12-13.

[17] This distinction is, for instance, demonstrated in 26 U.S.C. § 643(b), which provides in pertinent part:

Valuation

The remaining question is the proper valuation of the Donated Properties – whether adjusted basis or fair market valuation is appropriate under the statute. Plaintiff contends fair market value is applicable, while Defendant argues for adjusted basis.

Defendant contends that any capital appreciation must not be considered in the Donated Properties' valuation because such constitutes unrealized gains. *See* Defendant's Motion [Doc. No. 38] at 16-19 (citing *W.K. Frank Tr. of 1931 v. Comm'r*, 145 F.2d 411 (1944), *U.S. v. Benedict*, 338 U.S. 692 (1950), and *Comm'r v. Cent. Hanover Bank & Tr. Co.*, 163 F.2d 208 (2d Cir. 1947)). In support of this position, Defendant likens the Donated Properties either to (1) cash gifts not fully derived from gross income, or (2) donations made out of a trust's corpus. However, those analogies are inapposite because, as the Court has found, each of the Donated Properties derives from the Trust's gross income.

Under the facts of this case, using adjusted basis as the valuation standard would allow no consideration for the appreciation of real property donated in kind, regardless of whether such property was donated in the year of acquisition or in subsequent tax years. Defendant asks the Court to read a limitation into the statute where none expressly exists.

> [T]he term 'income', when not preceded by the words 'taxable', 'distributable net', 'undistributed net', or 'gross', means the amount of income of the estate or trust for the taxable year determined under the terms of the governing instrument and applicable local law.

*See also Estate of Clymer v. Comm'r*, 221 F.2d 680, 683 (3d. Cir. 1955); *Casco Bank & Tr. Co. v. United States*, 406 F. Supp. 247, 254 (D. Me. 1975).

Conversely, "the fair market value standard is as close to a generalized valuation standard as there is in the tax code." *Schwab v. Comm'r*, 715 F.3d 1169 (9th Cir. 2013).[18] Notably, Congress did not specify a different standard of valuation in § 642. Further, considering the context of the statutory language in question and in light of § 170 's general rule of fair market valuation regarding donations of property other than cash, a fair market valuation standard is consistent with the observation of the court in *Schwab*, and does not do violence to the plain language of § 642(c)(1).

**Conclusion**

The plain language of 26 U.S.C. § 642 supports a construction in favor of Plaintiff. The Court finds that Congress sought in § 642(c)(1) to authorize a deduction "without limitation," and fair market value is the appropriate valuation standard regarding the Donated Properties. Therefore, the Oklahoma Property is to be valued at $355,000 as of the date of donation, and the Texas Property is to be valued at $150,000 as of the date of donation. The Virginia Property's fair market value remains to be determined.

IT IS THEREFORE ORDERED that Plaintiff Mart D. Green's Motion for Partial Summary Judgment [Doc. No. 37] is **GRANTED,** and the portions of Defendant United

---

[18] The Ninth Circuit furthered its explanation by quoting an earlier decision by the Tax Court – "the concept of fair market value has always been part of the warp and woof of our income, estate, and gift tax laws, and ... [thus] the necessity of determining ... fair market values ... for ... numerous purposes has always been a vital and unavoidable function of the tax administrative and judicial process." *Id.* (quoting *Nestle Holdings, Inc. v. Comm'r*, 94 T.C. 803, 815 (1990) (internal quotations omitted)).

States of America's Motion for Summary Judgment [Doc. No. 38] addressed in this Order are **DENIED**.

IT IS SO ORDERED this 4th day of November, 2015.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE