# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MART D. GREEN, Trustee of the David and Barbara Green 1993 Dynasty Trust, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. CIV-13-1237-D |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

## **O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 38]. Plaintiff has timely responded [Doc. No. 43], and Defendant has replied [Doc. No. 47]. The Motion is fully briefed and ready for determination.[1]

This Order is the second related to Defendant's Motion[2] and addresses two residual issues for summary judgment: (1) whether $4.75 million in cash contributions issued by Hobby Lobby Stores, Inc. ("Hobby Lobby") can be deducted by the David and Barbara Green 1993 Dynasty Trust ("Trust"), and (2) whether the Trust is precluded from a further tax refund beyond the $20 million it has already received.

---

[1] This is a tax refund action arising from the internal revenue laws of the United States.

[2] A previous Order of the Court [Doc. No. 48], dated Nov. 4, 2015, addressed Plaintiff's Motion for Partial Summary Judgment [Doc. No. 37] and the primary issues raised in Defendant's Motion [Doc. No. 38] – Plaintiff's authorized deduction and the appropriate valuation standard to be applied to the Donated Properties according to 26 U.S.C. § 642.

## Statement of Undisputed Facts[3]

### The Trust

On December 7, 1993, David M. Green, Barbara A. Green, and Mart D. Green created the Trust. David and Barbara Green are the settlors of the Trust, and Mart D. Green is the trustee ("Plaintiff"). The Trust expressly authorizes Plaintiff to "distribute to charity such amounts from the gross income of the Trust as [Plaintiff] determines appropriate" [Doc. No. 1-1, § 2.2]. The Trust also provides that "[a] distribution may be made from the Trust to charity only when both the purpose of the distribution and the charity are as described in Section 170(c) of the Code" [Doc. No. 1-1, § 1.6].[4]

### Hob-Lob Limited Partnership

Between 2002 and 2004, Hob-Lob Limited Partnership ("Hob-Lob") owned or operated many, but not all, Hobby Lobby stores.[5] During this same period, the Trust was a 99% limited partner in Hob-Lob. Consequently, Hob-Lob filed its yearly income tax return with the Internal Revenue Service ("IRS") and, in conjunction with that filing, issued a Schedule K-1[6] to all of its partners, including the Trust.

---

[3] A more detailed factual statement can be found in the Court's Nov. 4, 2015, Order [Doc. No. 48]. For purposes of clarity, only facts pertinent to the two remaining issues have been included in this Order.

[4] "Charitable contribution," as defined by 26 U.S.C. § 170(c), includes "a contribution or gift to or for the use of . . . [a] corporation, trust, or community chest, fund, or foundation . . . organized and operated exclusively for religious [or] charitable . . . purposes." *Id.* at § 170(c)(2)(B).

[5] Hobby Lobby stores sell craft supplies throughout the United States.

[6] A Schedule K-1 identifies each partner's share of income, deductions, and credits that flow through the partnership to the partner, and distributions from the partnership to the partner for the particular year.

Cash Contributions

In 2004, Hob-Lob donated $1,870,204.46 in cash payments to Reach the Children Foundation, Inc. ("RTCF"). At that time, RTCF was a qualifed charity, and therefore Hob-Lob was allowed a 99% deduction for its cash payments to RTCF.[7] Hobby Lobby issued $4.75 million in cash payments ("Subject Contributions") to RTCF and Book of Hope, also a qualified charity, that same year.[8] Plaintiff purports that, although the Subject Contributions "were inadvertently issued by Hobby Lobby,"[9] they were actually donations made by Hob-Lob and "were properly accounted for on Hob-Lob's audited 2004 financial statements." Letter Re: Affidavit of Donor [Doc. No. 38-4], dated June 22, 2005; *see also* Williams' Affidavit [Doc. No. 43-6], dated March 23, 2015, at 2-3.[10]

Amended Return

On or about October 15, 2005, Plaintiff timely filed the Trust's Form 1041 income tax return for tax year 2004 with the IRS, claiming a charitable deduction totaling $20,526,383.

---

[7] Subject to the limitations in 26 U.S.C. § 681, this amount equaled $1,851,502.42.

[8] If allowed, and subject to the limitations in 26 U.S.C. § 681, this deductible would amount to approximately $4,702,500.00.

[9] Plaintiff maintains that this error "was likely caused by Hobby Lobby's and Hob-Lob's use of a shared accounting system." Pl. Resp. [Doc. No. 43] at 6.

[10] Plaintiff maintains that after the error was discovered, the companies "took steps to ensure that the [Subject Contributions] were properly accounted for on the books and records of Hob-Lob and corrected on Hobby Lobby's books and records through a series of intercompany accounting entries and subsequent reimbursement." Pl. Resp. [Doc. No. 43] at 28. The Subject Contributions were listed on Line 13 of the Schedule K-1 to Hob-Lob's 2004 Form 1065. *See id.* at 6-7, 28; *see also* Williams' Affidavit [Doc. No. 43-6], dated March 23, 2015, at 3. Hobby Lobby did not claim a charitable deduction for the Subject Contributions. *See id.*

On October 15, 2008, Plaintiff timely filed an amended Form 1041 (the "Amended Return") on behalf of the Trust, increasing the Trust's reported charitable deduction to $29,654,233,[11] and claiming an additional tax refund of $3,194,748. On December 8, 2011, the IRS sent Plaintiff a Notice of Disallowance regarding its refund claim.

## Standard of Decision

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits,

---

[11] This amount included $6.5 million in cash contributions – $1.8 million issued by Hob-Lob and the $4.75 million of Subject Contributions.

4

deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Analysis**

Subject Contributions

Defendant contends that "deductions cannot be exchanged or sold or otherwise distributed among taxpayers" (Def. Mot. [Doc. 38] at 24), because the implications would allow "all related taxpayers [to] rewrite history and adjust their books while preparing the previous year's tax return in order to maximize deductions and credits" (Def. Reply [Doc. No. 46] at 9), and avoid the consequences of structuring their financial affairs in a certain way. *See Comm'r. v. Nat'l Alfalfa Dehydrating & Milling, Co.*, 417 U.S. 134 (1974). The case that Defendant cites, however, is distinguishable from the present case. In *Nat'l Alfalfa Dehydrating & Milling, Co.*, the Supreme Court refused to speculate about what could have occurred had the financial transaction at issue been structured in a different way, and instead held to the established tax principle that "a transaction is to be given its tax effect in accord with what actually occurred." *Id.* at 148. The transaction was not a charitable contribution, therefore the deduction, if allowed, would have been a product of legislative grace. *Id.*

5

Further, the transaction was not a mistake; it was an intentional financial decision. The taxpayer sought a deduction on the grounds that the chosen transaction *could have been* structured in an economically equivalent manner that would have allowed a deduction. The Supreme Court refused to entertain the taxpayer's "what if" argument. *See id.* That situation is far different than the circumstances in the present case.

Here, a charitable deduction is at issue.[12] Although originally issued on Hobby Lobby checks, the Subject Contributions were ultimately borne by Hob-Lob. Once discovered, the clerical error was thoroughly addressed – letters of correction were sent, affidavits were signed, books were corrected, and most importantly, Hob-Lob reimbursed Hobby Lobby's account for the full amount of the Subject Contributions. Plaintiff is not seeking a deduction for the Trust based on a hypothetical situation as was the case in *Nat'l Alfalfa Dehydrating & Milling, Co.* Rather, Plaintiff requests relief in accordance with corrected financial statements that reflect actual contributions made by Hob-Lob. To disallow a charitable deduction simply because of a clerical error goes against the liberal policy of encouraging charitable giving and distorts the Supreme Court's holding in *Nat'l Alfalfa Dehydrating & Milling, Co.*

Therefore, as to this issue, Defendant is not entitled to judgment as a matter of law and its Motion is DENIED.

---

[12] Charitable deductions "are not matters of legislative grace, but rather 'expression[s] of public policy.'" Order [Doc. No. 48], dated Nov. 4, 2015, at 12 (quoting *Weingarden v. Comm'r*, 825 F.2d 1027, 1029 (6th Cir. 1987)).

Total Amount of Charitable Deduction Allowed

Defendant asserts that the Trust is precluded from an additional refund exceeding the $20 million it has already received, because any additional amount would exceed $17,227,772[13] – the amount that Defendant maintains is the Trust's maximum deduction for charitable contributions. See Def. Mot. [Doc. No. 38] at 19. However, Defendant's argument is based upon a calculation inconsistent with the Court's November 4, 2015, Order [Doc. No. 48] and is, therefore, foreclosed by the prior ruling. Accordingly, as to this issue, Defendant is not entitled to judgment as a matter of law and its Motion is DENIED.

## Conclusion

IT IS THEREFORE ORDERED that those portions of Defendant United States of America's Motion for Summary Judgment [Doc. No. 38] addressed in this Order are **DENIED**.

Pursuant to the Court's November 4, 2015, Order, the Virginia Property's fair market value as of the date of donation remains to be determined. See Order [Doc. No. 48] at 17.

IT IS SO ORDERED this 10th day of February, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[13] This number was reached by adding "the Trust's adjusted basis in the Donated Real Properties" to the $6.5 million in cash contributions claimed. Def. Mot. [Doc. No. 38] at 19.